CADET-ETTES CORPORATION, APPELLEE, *v.*
BROWN, ATTORNEY GENERAL, APPELLANT.

(No. 8650—Decided December 30, 1977.)

*Mr. Dennis Shaul,* for appellee.

*Mr. William J. Brown,* attorney general, *Mr. John W. Clark, III, Ms. Toba Jeanne Feldman* and *Mr. James B. Farmer,* for appellant.

VICTOR, J. This appeal presents the problem of how broadly the word "school" should be construed under R. C. 2915.01(J) for purposes of determining an organization's eligibility, as an educational organization under R. C. 2915.01(H), for a bingo license. These licenses are available to

188

duly qualified organizations under R. C. Chapter 2915. An organization holding such a license may run bingo games when such conduct would otherwise be unlawful.

The Attorney General of Ohio, appellant, undertook to revoke a license previously granted Cadet-ettes Corporation, appellee, on the grounds that Cadet-ettes did not qualify for the license as an educational institution. The Attorney General so found at its administrative hearing and revoked the license. The Common Pleas Court reversed that decision on Cadet-ettes' appeal, after finding that the Attorney General's decision was arbitrary and unreasonable. Upon the Attorney General's appeal to this court, we reverse the Common Pleas Court's decision and reinstate the judgment and decision of the Attorney General.

The Attorney General raised two assignments of error, which we will consider together:

"1. The Common Pleas Court of Summit County erred in finding that the Attorney General's revocation of the Cadet-ettes Corporation bingo license was arbitrary and unreasonable.

"2. The Common Pleas Court of Summit County erred in finding that Cadet-ettes Corporation was an educational organization within the meaning of Section 2915.01(J) of the Ohio Revised Code."

Under R. C. 2915.07 and R. C. 2915.08, charitable organizations may obtain bingo licenses if they satisfy three definitional requirements set out by R. C. 2915.01(H) which reads:

" 'Charitable organization' means any tax exempt religious, educational, veteran's, fraternal, service, nonprofit medical, volunteer rescue service, volunteer firemen's, or senior citizen's organization. An organization is tax exempt if it is exempt from federal taxation under subsection 501(c)(3), 501(c)(4), 501(c)(8), 501(c)(10), or 501(c)(19) of the Internal Revenue Code. To qualify as a charitable organization, an organization,***shall have been in continuous existence as such in this state for a period of two years immediately preceding the making of an application for a bingo license under section 2915.08 of the Revised Code."

There is no dispute here that Cadet-ettes is exempt from federal taxation under the Internal Revenue Code, Section

501(c)(3), Title 26, U.S. Code, and that it has been continuously in existence as required by the statute. It, thus, satisfies the latter two of the three requirements. The parties disagree, however, as to whether Cadet-ettes satisfies the first requirement, that of being one of the named organizations. Cadet-ettes specifically argues it is and, therefore, operates a "school," a categorization with which the Attorney General disagrees.

What comprises an "educational" organization for purposes of R. C. Chapter 2915 is defined by R. C. 2915.01(J) as:

" 'Educational organization' means any organization within this state that is not organized for profit, the primary purpose of which is to educate and develop the capabilities of individuals through instruction, and that operates or contributes to the support of a school, academy, college, or university."

Cadet-ettes is a 19 year old nonprofit organization which arguably develops certain capabilities of individuals through instruction. It instructs young girls in the arts of baton twirling, percussion instrument playing, and drill formation marching. It undertakes both to teach its approximately one hundred "members" morals and to build their characters.

All members of the group meet together once a week in a hall reserved for their use. They use the hall at other times in smaller groups, and occasionally individual members meet for private instruction with one of the six "qualified" instructors.

In *State, ex rel. Church of the Nazarene,* v. *Fogo* (1948), 150 Ohio St. 45, 47, the Supreme Court of Ohio set out the rules for construing the words in statutes and then construed the word "school." The court stated:

"Words of a statute will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them.***[Citations omitted].

"In the ordinary acceptation, the term 'school,' standing alone, is a place where general education is imparted to young people. The meaning commonly attributed to the term is an institution conducting a course of general education and mental training similar to that offered to children by a public educational system.***"

Cadet-ettes argues this construction should not control here, because *Fogo, supra,* involved an interpretation of a

statutory provision exempting "school" property from taxation, and that such statutes must be narrowly construed. *Id.*, at 47. Here, it is argued, the statute's words should be broadly construed as exemptions from criminal prosecutions.

Appellee's line of reasoning is generally proper. The Supreme Court, however, construed the word "school" in its *ordinary* acceptation and significance, and with a meaning *ordinarily* attributed to it. Therefore, while the word "school" in its broadest sense suggests any place of institution where instruction takes place or where knowledge is imparted, we believe the scope of the word is limited for statutory purposes by *Fogo, supra.* Other jurisdictions have similarly construed the words "school" or "schools."

In a case involving the interpretation of a contract, it was stated:

"***[t]he word 'school' by common usage, is considered local school corporations and does not generally include higher seats of learning which are usually referred to as colleges or universities.

" 'The word "school" is a generic term, denoting an institution or place for instruction or education, or the collective body of instructors and pupils in any such place or institution. In the ordinary acceptation of its meaning, a school is a place where instruction is imparted to the young. It is an institution of learning of a lower grade, below a college or a university; a place of primary instruction.' 11 I.L.E., *Education,* §1 p. 74." *Lawrence* v. *Cain* (1969), 144 Ind. App. 210, 216, 245 N.E. 2d 663, 666.

See also, *Pike* v. *State Board of Land Commrs.* (1911), 19 Idaho 268, 282-283, 113 P. 447, 452; 68 American Jurisprudence 2d 359, 360, Schools, Section 1. *Cf. People, ex rel. Brenza,* v. *Turnverein Lincoln* (1956), 8 Ill. 2d 198, 132 N.E. 2d 499.

While the word "school" in R. C. 2915.01(J) does not stand completely alone, as it did when considered in *Fogo, supra,* we note it is not modified by any adjective and, as construed, logically precedes the nouns following it. If "school" is to be given the broad meaning urged by Cadet-ettes, the further enumeration of "higher" institutions of learning would be superfluous. This type of construction should be avoided. See *The Glidden Co.* v. *Glander* (1949), 151 Ohio St. 344, 350; 2A

Sutherland Statutory Construction Section 47.17 (4th ed. 1973).

The fact that Cadet-ettes is an educational organization under Section 501(c)(3) does not determine its status in Ohio. The Ohio definition is more limited than the federal definition. Compare, 26 Code Fed. Reg. 1.501(c)(3)-1(d)(3)(ii) with R. C. 2915.01(J). Further, the legislature should have been aware of *Fogo, supra.* Had the legislature wished to expand the scope of its enactment, it could have drafted the statute appropriately. *Cf. Wishnek* v. *Gulla* (1953), 67 Ohio Law Abs. 49, 51, 114 N.E. 2d 914, 916; 82 Corpus Juris Secundum 796, 797, Statutes, Section 363.

While Cadet-ettes Corporation fills a community need and provides certain types of training and instruction, it does not operate a "school" as that term is contemplated by R. C. 2915.01(J) as construed in light of the authorities cited. It, therefore, does not qualify as an educational organization for the purposes of obtaining a bingo license. The Attorney General's decision was neither arbitrary nor capricious.

The appellant's assignments of error are well-taken. We, therefore, reverse the judgment of the Common Pleas Court and reinstate the judgment and decision of the Attorney General.

*Judgment reversed.*

MAHONEY, P. J., and HUNSICKER, J., concur.

HUNSICKER, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.